1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALISHA L. HESS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. CV-12-0487-JTR<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT |

18
19
20
21
22
23
24

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF Nos. 16, 18. Attorney Maureen J. Rosette represents Alisha Lynne Hess (Plaintiff); Special Assistant United States Attorney Willy M. Le represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

25

**JURISDICTION**

26
27
28

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on September 10, 2009, alleging disability since January 26, 2009, due to her "bipolar condition." Tr. 165. The application was denied initially

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

and upon reconsideration.  Administrative Law Judge (ALJ) Caroline Siderius held a hearing on January 11, 2011, Tr. 59-83, and issued an unfavorable decision on January 27, 2011, Tr. 43-55.  The Appeals Council denied review on June 5, 2012. Tr. 1-6.  The ALJ's January 2011 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on July 26, 2012.  ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on March 27, 1980, and was 28 years old on the alleged onset date, January 26, 2009.  Tr. 160.  Plaintiff indicated she completed the 12th grade in high school, but has taken no college classes.  Tr. 71-72, 169.  She reported that, while in school, she was constantly in trouble for "acting out and mouthing off."  Tr. 67.  She testified at the administrative hearing she last worked as a data entry clerk in January 2009 and stopped working because she went on long-term disability due to symptoms stemming from a bi-polar disorder.  Tr. 63-64.  She stated she cannot hold a job because she is anxious and does not handle stress well.  Tr. 65.  She indicated the longest job she has had lasted for a year and a half and it ended with her getting fired for insubordination, following an argument with her manager.  Tr. 66.  She testified she is unable to go back to work because she cannot handle stress.  Tr. 72.

Plaintiff indicated she does not get along well with others because she comes across as abrasive.  Tr. 72.  She stated she takes criticism personally and tends to get angry and lash out.  Tr. 72.  She also stated she misses an excessive amount of work due to days she stays in bed because she does not feel well.  Tr. 72.  Upon questioning by her attorney, Plaintiff indicated she does not maintain focus well.

Tr. 73.  As a result, she is able to read, but does not retain the information well.  Tr. 74.

Plaintiff testified she started seeing a psychologist, Dr. Neils, in 2009.  Tr. 69.  She first saw him every week, it then moved to every month, and she currently sees him on an "as needed" basis.  Tr. 69.  Plaintiff testified at the administrative hearing that when she first started seeing Dr. Neils, he diagnosed her as bi-polar: "with my history that I explained to him . . . . [H]e told me that everything that I had described to him, he figured [it] was . . . bi-polar disorder."  Tr. 64.

Plaintiff stated that, on a typical day, if she wakes up feeling "okay," she will get up, take a shower, eat something, and pick up her apartment a little.  Tr. 71.  If she does not wake up feeling well, she will stay in bed all day.  Tr. 71.  She indicated she did not really have friends, but, once or twice a week, she would visit her brother and/or go to her parent's home.  Tr. 71, 74.  She testified that if she feels like doing household chores, she can do them, including vacuuming, doing the laundry and cleaning.  Tr. 74.  She stated it was "just a matter of whether or not I feel like doing it."  Tr. 74.

## ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 26, 2009, the alleged onset date.  Tr. 45.  The ALJ determined, at step two, that Plaintiff had a severe impairment of bipolar disorder.  Tr. 45.  At step three, the ALJ found Plaintiff's mental impairment did not meet or medically equal a listed impairment.  Tr. 47.  The ALJ assessed Plaintiff's RFC and determined that she could perform a full range of work at all exertional levels but with the following nonexertional limitations:  she can perform simple, repetitive 1 to 3 step tasks, but no detailed work and she is capable of tolerating only occasional changes in the work setting and superficial contact with the public and co-workers.  Tr. 49.

At step four, the ALJ concluded that, considering Plaintiff's RFC, and based

on the testimony of the vocational expert, Plaintiff was able to perform her past relevant work as a machine operator II, data entry clerk, and wire harness assembler.  Tr. 54-55.  The ALJ thus determined that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 26, 2009, the alleged onset date, through the date of the ALJ's decision, January 27, 2011.  Tr. 55.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the Court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo.  *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one

rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on

proper legal standards.  Plaintiff contends the ALJ erred because she is more limited from a psychological standpoint than what was determined by the ALJ.  ECF No. 16 at 9.  Plaintiff specifically argues that the ALJ failed to properly consider the opinion of treating psychologist Rob Neils, Ph.D., and that new evidence submitted to the Appeals Council, a report completed by Debra D. Brown, Ph.D., more than seven months after the ALJ's decision in this case, further evidences she is more limited from a psychological standpoint than what was determined by the ALJ.  ECF No. 16 at 9-15.

## DISCUSSION

### A.   Dr. Neils

Plaintiff argues that the ALJ should have accorded greater weight to the opinions of treating psychologist Dr. Neils when assessing Plaintiff's mental RFC.  The undersigned determines that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for not according significant weight to Dr. Neils opinions.  *See infra*.

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's

opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

Plaintiff began seeing Dr. Neils on February 4, 2009. Tr. 252. On January 20, 2010, Dr. Neils reported he had seen Plaintiff on two dozen separate occasions since he first began treating her in February 2009.[1] Tr. 252. In February 2009, Dr. Neils diagnosed Plaintiff with mood disorder, NOS, and rule out provisional bipolar disorder "[g]iven her description of symptoms," which she described as "extreme mood swings from 'really happy' to severely depressed, cycling back and forth through 'every few days.'" Tr. 255. On March 4, 2009, Dr. Neils reported that "[g]iven her description of symptoms," a diagnosis of bipolar disorder, most recent episode depressed, severe, with mood congruent psychotic features, was appropriate. Tr. 254. It was again noted that Plaintiff described "extreme mood swings from 'really happy' to severely depressed, cycling back and forth though 'every few days.'" Tr. 254. Dr. Neils indicated Plaintiff was on temporary disability at the time, but was scheduled to return to work on March 22, 2009. Tr. 254.

On January 20, 2010, Dr. Neils diagnosed Plaintiff with bipolar disorder, most recent episode depressed, severe, with mood congruent psychotic features; panic disorder with moderate agoraphobia; and personality disorder, NOS with borderline traits. Tr. 252. Dr. Neils indicated Plaintiff described symptoms of extreme mood swings, pressured speech, flight of ideas, over-spending on useless items, delusions, fear that others can invade her thoughts, daily episodes of being unable to concentrate or remember things, unprovoked agitation, insomnia and hypersomnia, hearing unintelligible sounds, and panic attacks with moderate

---

[1]As noted by the ALJ, although Dr. Neils stated on January 20, 2010, that he had seen Plaintiff 24 times since he first began seeing her in February 2009, chart notes were not included to substantiate the claim. Tr. 53.

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

agoraphobia.  Tr. 252.  It was noted that a Millon Clinical Multiaxial Inventory-III test revealed extreme elevations across Personality Patterns and Clinical Syndromes.  Tr. 252.  Dr. Neils also indicated Plaintiff had lost many jobs due to her multiple cognitive impairments, her inability to relate adequately with co-workers and supervisors and her unreliability to show up and get her assigned tasks done correctly and efficiently.[2]  Tr. 253.

On December 20, 2010, Dr. Neils reported he had seen Plaintiff on an "as needed basis" since January 22, 2009.  Tr. 291.  Dr. Neils indicated Plaintiff had a moderate to marked limitation in her ability to understand and remember detailed instructions and does not sustain routine without special supervision and, even with special supervision, has to be monitored closely.  Tr. 291.  He noted that Plaintiff reported she had been late for every job she has ever had, has been fired from jobs because of her absenteeism or tardiness, and has been in trouble for work avoidance, falling asleep on the job, slow work rate, and inappropriate behavior at her workstation.  Tr. 291.  It was further reported that Plaintiff used any and all excuses to spend time with other coworkers rather than do work, she not only failed to produce but also distracted others from producing work, and she was rarely able to complete a two-hour work shift without interruptions from psychologically based symptoms.[3]  Tr. 292.  Dr. Neils completed a Mental Medical

---

[2]As noted by the ALJ, Dr. Neils' report of Plaintiff's work issues is provided without any corroborating evidence.  Tr. 54.  Plaintiff also failed to provide the ALJ with employment records to verify her alleged work deficiencies.  Tr. 53.

[3]Again, Dr. Neils' report of Plaintiff's alleged work deficiencies is provided without any corroborating evidence, other than Plaintiff's self-report.  Tr. 54.  Plaintiff additionally failed to provide the ALJ with employment records to substantiate her allegations of insubordination, excessive absenteeism and poor work ethic.  Tr. 53.

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

Source Statement opining Plaintiff had several marked and severe mental limitations.  Tr. 294-296.

The ALJ provided several bases to reject Dr. Neils' opinion that Plaintiff had significant mental limitations.  Tr. 50-54.

The ALJ indicated, inconsistent with Dr. Neils' opinions, that Plaintiff's other treatment providers had found her to be pleasant and cooperative, oriented to person, place and situation, and appeared to have normal judgment and memory during the relevant time period at issue.  Tr. 52, 234-251.  Plaintiff's treating physician Alan Skidmore, M.D., reported Plaintiff was feeling less angry and irritable on April 1, 2009.  Tr. 237.  He described Plaintiff as pleasant and her affect as not depressed.  Tr. 237.  On April 22, 2009, Dr. Skidmore indicated he got the impression that Plaintiff's issue was more of a personality disorder, rather than a bipolar affective disorder, because "her affect was not congruent with how severe she stated her mood was."  Tr. 236.  Dr. Skidmore reiterated this opinion on May 13, 2009, and noted that Plaintiff reported less anger and no panic attacks.  Tr. 46, 235.  Dr. Skidmore indicated on July 14, 2009, that Plaintiff's migraine headaches were well controlled and there were no non-psychologically related medical problems which would prevent her from working.  Tr. 46, 234.  He described Plaintiff as a pleasant, young female with a somewhat flat affect.  Tr. 234.  These reports from Plaintiff's treatment providers are inconsistent with the significant limitations assessed by Dr. Neils.

The ALJ also noted that Dr. Neils' conclusions are primarily based on Plaintiff's subjective self-reports or self-administered depression surveys without any evidence substantiating her alleged difficulties.  Tr. 54.  It is apparent from a review of Dr. Neils' records, as outlined above, that Dr. Neils based the majority of his opinion evidence on Plaintiff's self-reported symptoms and self-reported medical history without any outside corroboration.  Plaintiff's testimony at the administrative hearing further supports this conclusion.  Plaintiff testified that

when she first started seeing Dr. Neils, he immediately diagnosed her as bi-polar: "with my history that I explained to him . . . . [H]e told me that everything that I had described to him, he figured [it] was . . . bi-polar disorder." Tr. 64.

With respect to Plaintiff's credibility, the ALJ provided several reasons for discounting plaintiff's subjective complaints, Tr. 51-53, and those reasons are fully supported by the record. Plaintiff does not contest the ALJ's credibility finding in this case. *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998); *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) (holding that issues not specifically and distinctly contested in a party's opening brief are considered waived). Consequently, it is undisputed that the ALJ properly determined that Plaintiff was not fully credible in this matter. Since Plaintiff was properly found by the ALJ to be not entirely credible, the ALJ appropriately accorded little weight to Dr. Neils' medical reports because they were primarily based on Plaintiff's non-credible subjective complaints. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion premised primarily on a claimant's subjective complaints may be discounted where the record supports the ALJ's discounting of the claimant's credibility); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted).

The ALJ additionally noted Plaintiff's conservative treatment undermined Dr. Neils' opinion. Tr. 50-51. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (a conservative course of treatment is not consistent with a finding that a claimant is totally disabled under the Act). The ALJ noted that Plaintiff only saw Dr. Neils on an "as needed" basis. Tr. 51. Plaintiff reported seeing Dr. Neils weekly at first, then once a month, and then "as needed." Tr. 50. This progression appears to show an improvement of Plaintiff's symptoms, and the overall conservative course of treatment is not consistent with the severe limitations

1    reported by Dr. Neils.

2      The ALJ also stated that Plaintiff would shorten her use of medications

3    despite medical reports indicating that they were of benefit,[4] and that Plaintiff had

4    failed to comply with her doctor's recommendation to exercise.[5]  Tr.  51.

5    Noncompliance with medical care or unexplained or inadequately explained

6    reasons for failing to seek medical treatment cast doubt on a claimant's subjective

7    complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603

8    (9th Cir. 1989).  The fact that Plaintiff failed to comply with the medical treatment

9    prescribed by Dr. Neils discounts her claim of disabling limitations.

10     The ALJ also referenced Plaintiff's apparent lack of motivation to work.  Tr.

11   53.  The Ninth Circuit has recognized that the ALJ may properly consider the issue

12   of motivation.  *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).  Dr. Neils

13   reported on January 20, 2010, that Plaintiff had a "strong disability conviction" and

14   "lackadaisical attitude" even when her medications mostly controlled her

15   symptoms.  Tr. 54, 253.  As noted by the ALJ, Plaintiff reported to Dr. Neils on

16   March 4, 2009, that she was scheduled to return to work from temporary disability

17   on March 22, 2009, but would "bolt" if she could find another job with similar

18   good pay.  Tr. 254.  Plaintiff also testified at the administrative hearing that she

19   _____

20     [4]Dr. Neils reported on December 2010, that a change in medications helped

21   control Plaintiff's anger but she did not continue with the medication as prescribed.

22   Tr.  293.

23     [5]Plaintiff testified at the administrative hearing that she tried to comply with

24   her doctor's recommendation in December 2008 to walk for 15 minutes, three

25   times a day, but was unable to comply due to a broken ankle in March 2010.  Tr.

26   51.  Not only is there no evidence in the record to substantiate a broken ankle, but

27   there is also no explanation provided for Plaintiff not being compliant for the 15

28   months prior to the alleged broken ankle.  Tr. 51-52.

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

could perform household chores, including vacuuming, doing the laundry and cleaning, it was "just a matter of whether or not I feel like doing it." Tr. 74. It would appear that, inconsistent with her claims of disabling limitations, Plaintiff believed she could perform work activities, but, as indicated by the ALJ, lacked motivation to do so.

The ALJ additionally found Dr. Neils' conclusions were inconsistent with Plaintiff's activities of daily living. Tr. 54. An ALJ may discount a doctor's opinion of social and cognitive limitations to the extent it conflicts with the claimant's daily activities. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999) ("The ALJ noted, contrary to Dr. Reaves's conclusion that Morgan suffered from 'marked limitations,' that the evidence established that Morgan adequately copes with the social aspects of daily living, continues to maintain some friendships, and manifests above-average intelligence and other cognitive abilities."). The ALJ noted that Plaintiff was capable of frequently visiting her family, went binge shopping/impulse shopping on occasion, and had no complaints from her care providers of inability to get along with the providers or their staff. Tr. 51. The ALJ appropriately discounted Dr. Neils' opinion as inconsistent with Plaintiff's activities of daily living.

Based on the foregoing, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for according little weight to Dr. Neils' opinion. The ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, repetitive 1 to 3 step tasks, but no detailed work and she is capable of tolerating only occasional changes in the work setting and superficial contact with the public and co-workers. Tr. 49. The evidence of record does not support a more restrictive mental RFC assessment in this case.

**B.  Dr. Brown**

Plaintiff also argues that new evidence submitted to the Appeals Council

following the ALJ's January 27, 2011, decision, a report completed by Debra D. Brown, Ph.D., on September 7, 2011, Tr. 19-24,[6] further evidences that she is more limited from a psychological standpoint than what was determined by the ALJ. ECF No. 16 at 14-15.

Dr. Brown filled out a Psychological/Psychiatric Evaluation form indicating Plaintiff had severe depression; an inability to pay attention and concentrate, focus on details, or think logically and linearly; sensitivity to criticism, difficulty working in an environment where unconditional positive regard is not guaranteed; hyper-reactivity to fear triggers, resulting in cessation of work, distraction of coworkers, high absenteeism and a likelihood of walking off the job without warning; hypervigilance in relationships with supervisors and coworkers and sensitivity to criticism; over-reactivity to even minor criticism or perceived criticism; and work tardiness and excessive absenteeism. Tr. 20.

The relevant time period in this action is from January 26, 2009 (the alleged onset date) through January 27, 2011 (the date of the ALJ's determination in this case). Evidence from outside of this period of time is irrelevant to the extent that it does not address claimant's medical status during the relevant period at issue in this action. *See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989). Dr. Brown's assessment took place more than seven months after the ALJ's decision in this case, and there is no indication Dr. Brown's report addresses Plaintiff's functioning

---

[6]This "new evidence" is part of the record for this Court's review. *See, Harman v. Apfel*, 211 F.3d 1172, 1179-1180 (9th Cir. 2000) (the district court properly considered new evidence submitted to the Appeals Council because the Appeals Council addressed those materials in the context of denying review); *Ramirez v. Shalala*, 8 F.3d 1449, 1451-1452 (9th Cir. 1993) (the district court appropriately reviewed all materials, including new evidence not before the ALJ, after the Appeals Council declined to accept review in light of the entire record).

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

during the relevant time period.  Furthermore, as with Dr. Neils, the alleged work deficiencies noted in Dr. Brown's September 2011 report are not corroborated by any evidence of record.  Plaintiff did not provide the ALJ or the Appeals Council with employment records to verify her allegations of work deficiencies.  Therefore, the work issues indicated by Dr. Brown are apparently drawn from Plaintiff's non-credible self-report.  *See Tonapetyan*, 242 F.3d at 1149 (a physician's opinion premised primarily on a claimant's subjective complaints may be discounted where the record supports the ALJ's discounting of the claimant's credibility).  As noted by Defendant, there is no evidence Dr. Brown relied on any other evidence, besides Plaintiff's non-credible statements and the examination findings which were essentially normal.[7]  Tr. 24.  Dr. Brown's September 2011 report is of little evidentiary value as it does not materially change or otherwise affect the evidence supporting the ALJ's determination in this case.  The ALJ's RFC determination remains supported by substantial evidence of record.

The ALJ's RFC determination is in accord with the weight of the record evidence and free of error.  The record does not support a more restrictive finding than Plaintiff being restricted to work involving no more than simple, repetitive 1 to 3 step tasks, with no detail and with only occasional changes in the work setting and superficial contact with the public and co-workers.  Tr. 49.  The Commissioner did not err by so finding in this case.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error.  Accordingly,

_____

[7]Dr. Brown's examination revealed Plaintiff's overall mental status examination results "were normal with a score of 28 out of 30."  Tr. 24.  Plaintiff also "scored in the normal range" on her Trails A & B test.  Tr. 24.

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

1    **IT IS ORDERED:**

2    1.    Defendant's Motion for Summary Judgment, **ECF No. 18**, is

3    **GRANTED**.

4    2.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

5    The District Court Executive is directed to file this Order and provide a copy

6    to counsel for Plaintiff and Defendant.  Judgment shall be entered for

7    **DEFENDANT** and the file shall be **CLOSED**.

8    DATED November 5, 2013.

9

10       _____

11                        JOHN T. RODGERS
                         UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28